SUAREZ, J.
Tom Penquite appeals from a trial court order denying his motion for fees. We affirm the trial court, as Penquite was not the first in time to statutorily complete the claims process for which he is claiming fees.
*734 Penquite is a licensed Florida private investigator. Part of his practice involves locating unclaimed assets held by the State of Florida and attempting to restore those assets to their rightful owners, for which he is entitled to receive a fee. In 2008, he located unclaimed assets worth over $480,000 in Elizabeth Davis’ name being held by the state. He located Ms. Davis, residing at Plantation Key Convalescent Center, Inc., a nursing facility, and learned that a person named Marisol Perez-Gue-varra had held power of attorney for Ms. Davis since 2005, authorizing her to control certain bank accounts for the benefit of Ms. Davis.[1] In 2009, Penquite entered into a limited power of attorney with Perez-Guevarra authorizing him to obtain the unclaimed property for Ms. Davis. As consideration, Penquite was to receive a statutorily authorized fee of twenty percent of the amount he recovered.
On January 23, 2009, Penquite filed a claim on behalf of Ms. Davis with the State of Florida Department of Financial Services [“DFS” or “the Department”] to recover the funds. Unknown to Penquite, the nursing facility, through its attorney, had, in 2008, initiated a civil case against Perez-Guevarra because of concerns over how she had been handling Ms. Davis’ finances. On January 29, 2009, Judge Garcia revoked Perez-Guevarra’s power of attorney.
About four months later, Penquite received a letter from DFS requesting the statutorily required photo identification of Ms. Davis in order to complete processing the claim.[2] When Penquite went to the Department of Family Services and the nursing facility, he learned about the order invalidating Perez-Guevarra’s power of attorney and the new guardianship proceedings. Penquite immediately notified DFS to ensure that the unclaimed funds would be deposited into the guardianship account for the benefit of Ms. Davis. Penquite moved to intervene in the guardianship proceedings. He then notified DFS that Ms. Davis had no identification, and could not get a new driver’s license or photographic identification because she had no birth certificate or passport. In July 2009, DFS filed a letter notice to the court, confirming that Penquite had notified them of the order terminating Perez-Gue-varra’s power of attorney and that it was its intention not to disburse the funds pending further order of the court.
At the August 6, 2009, hearing on Pen-quite’s motion to intervene, the trial judge granted the motion, re-validated Pen-quite’s limited power of attorney to secure the money for Ms. Davis, and gave him thirty days to do so. The trial court also ordered DFS to disburse all monies to a restricted bank account for the benefit of Ms. Davis. The written order[3] gave Pen-quite “the right to request ... all fees, costs and/or contractual amounts he may be entitled to recover” for any and all work he did to recover Ms. Davis’ funds.
On August 18, 2009, the new guardian for Ms. Daws, Audra Hill, was appointed. The following day, Mr. Thornes, counsel for the nursing home, and Ms. Suarez, counsel for the guardian, provided affidavits to the guardian, Ms. Hill, attesting to Ms. Davis’ identity. Hill then sent a new Claim for Unclaimed Property form to the DFS showing that it was being filed by Audra Hill, Guardian for Ms. Davis, along with a copy of the order appointing her legal guardian and the affidavit attesting *735 to the identity of Ms. Davis. DFS approved the claim filed by Ms. Hill on Ms. Davis’ behalf on August 17, 2009. The Department then denied Penquite’s claim because he had not provided proof of Ms. Davis’ identification and, as such, had not completed the required claims process. Penquite was informed by DFS that he could take an administrative appeal of its decision but Penquite chose not to. On August 24, 2009, DFS notified the trial judge of its actions, recommended Hill’s claim, and issued a warrant for $488,642.89 for deposit into the restricted guardianship account. Penquite then filed with the trial court a motion for fees for his work. Following an evidentiary hearing, the successor trial judge denied Penquite’s motion for fees, and based his denial on Penquite’s failure to timely provide DFS with proper identification for Ms. Davis, and also based on DFS’s independent rejection of Perez-Guevarra’s power of attorney and her failure to meet the statutory definition of a guardian or representative. Penquite then brought the present appeal.
Penquite’s motion for fees claims he was entitled to the finder’s fee because it was only due to his effort that the unclaimed accounts were deposited into the guardianship account and that he was responsible for recovering these unclaimed funds through legal avenues. We do not dispute that Penquite worked very hard to attempt to recover these funds for Ms. Davis.[4] But, the issue is whether Penquite was the representative who finally secured the money from DFS for Ms. Davis. Florida statutes dictate what is needed in order to complete the application process for unclaimed property, and also dictates to DFS the outcome should there be, as here, competing claims to the same unclaimed property.
The Department is governed by Chapter 717, Florida Statutes, which provides rules for the disposition of unclaimed property. Section 717.124(1) provides what proof must be presented to DFS to establish a claim. One part of the proof requires the claimant or claimant’s representative to provide proof of the claimant’s identity and address and states what manner of proof will be accepted:
The claimant, or the claimant’s representative, shall provide the department with a legible copy of a valid driver’s license of the claimant at the time the original claim form is filed. If the claimant has not been issued a valid driver’s license at the time the original claim form is filed, the department shall be provided with a legible copy of a photographic identification of the claimant issued by the United States, a state or territory of the United States, a foreign nation, or a political subdivision or agency thereof or other evidence deemed acceptable by the department by rule. In lieu of photographic identification, a notarized sworn statement by the claimant may be provided which affirms the claimant’s identity and states the claimant’s full name and address.
Ms. Davis had no driver’s license, passport or other photographic identification, and neither Penquite nor anyone else was able to supply this form of identification to DFS. The only remaining acceptable form of identification available to the claimant or claimant’s representative was, according to the statute, a notarized sworn statement confirming Ms. Davis’ identity and providing her full name and address. Despite the trial court’s grant to Penquite of the opportunity to complete his claim, the appointed guardian was the first in time to *736 submit a completed claim to DFS with affidavit proof of Ms. Davis’ identity, albeit with significant assistance from the nursing home, assistance that Penquite was apparently not able to secure.[5] In the situation where there are competing or conflicting claims, as here, the Department must release the assets to the person submitting the first claim received by the Bureau of Unclaimed Property that is complete or made complete. § 717.1241(1)(a), Fla. Stat. (2008). In this case, the appointed guardian was the first in time to file a completed claim by submitting to DFS proper identification of Ms. Davis, pursuant to statute. Therefore, the funds were actually obtained through the efforts of the guardian as she was the first in time to complete the claims process.
We are not unsympathetic to Penquite’s position, and we understand that, but for his considerable efforts, Ms. Davis may not now have the substantial assets she enjoys. Because the Department is bound by statute, however, and where Ms. Davis’ legally appointed guardian was the first to fulfill all of the statutory requirements to complete the claim, Penquite’s request for fees was properly denied.[6]
Affirmed.

.Perez-Guevarra was not Ms. Davis' legal guardian, nor did she have full power of attorney over Ms. Davis’ assets and affairs.

. § 717.124, Fla. Stat. (2008).

. Rendered August 14, 2009.

. A previous claim was filed by another claimant’s representative attempting to obtain the funds for Ms. Davis, but that representative also did not complete the claims process.

. Contrary to Penquite's argument, the order granting his motion to intervene did not grant him entitlement to fees, only the opportunity to file a motion to request any and all fees “he may be entitled to recover for any and all work done ... to recover these funds _" [emphasis added]